Good morning, Your Honors. May it please the Court. Mandy Lee for Matthew, Plaintiff Appellant, and I'd like to reserve a few minutes for rebuttal. Matthew is a student, as the Court acknowledged, with Asperger's, and the Court also recognizes that that is a form of autism. Matthew set fire to the room underneath his parents' bedroom in an attempt to harm them so that he could escape the bullying and social isolation that he was experiencing in the school setting. Those issues stem from manifestations related to his autism and his Asperger's. Matthew's parents have been awarded his guardian because the states determined that he functions somewhere in the range of a six- or seven-year-old in his daily life activities. He's also been determined by Medicaid eligible for institutionalization because he functions solo. The fact that he functions solo means that he is not able to get gainful employment and he cannot live independently. The trial court in this case had two prongs, shall we say, which have been discussed previously, of the category of eligibility for Matthew. One is whether because of Matthew's disability, his disability adversely affects his educational performance. The second prong is that because he is an individual with a disability, whether he is in need of special education. There are two separate elements of the state and federal statute. The trial court erred in significant ways below. First, the trial court attempts to narrow the Idaho statute by saying that the indicia for whether a child qualifies for special ed is only based on how the child is performing in school. In other words, you heard opposing counsel earlier state, well, he was performing well. He was performing well in school based on teacher testimony. That's what the trial court found. But if this court upholds such a limiting factor for eligibility, it would have to ignore the plain language of the statute of Idaho, which requires a broad scope reading, that's in the language, and a determination of adverse effect both in academic and nonacademic areas. That is what the statute requires. It does not allow schools to limit eligibility based on how the teacher says or how the teacher measures the child is doing. Second, this court would have to, can only uphold the trial court's decision if it ignores regulations promulgated by the Department of Education. The Department of Education, which is entitled to Chevron deference, has specifically promulgated a regulation that says passing from grade to grade is not a basis for determining eligibility or ineligibility for that matter. And we've attached to our brief a few letters of guidance from the Department of Education, also entitled to Chevron deference, which specifically state that academic measures alone are not a basis for determining eligibility. If this court upholds the narrowing of the Idaho statute, it would also be narrowing the federal purpose of the IDEA at 20 U.S.C. 1401. Now the language of the IDEA is broad in scope. It specifically says that not only is a student entitled to services designed to meet their unique needs in all areas of suspected disability, but that student is also entitled to services that foster independent living and employment, neither of which Matthew is capable of enjoying because of the way that he functions due to his Asperger's. Is it your, are you contending that the school district did not consider any non-economic factors or that the school district did not adequately consider non-economic factors, academic factors? I would say the answer to those are yes to both. The reason is because, number one, the school district only did observation. And this is exactly what the first hearing officer was concerned with and why the hearing officer ordered the IEE, because the school district was refusing to recognize that Matthew had not overcome the adverse effects of his disability. It's why the hearing officer was so deeply concerned and had very strong language as the trial court found in the 320 companion case. So that's critical. They did not do, and I think they've waived many arguments about the extent of Matthew's disability because they refused to assess him, even in the face of the prior school district saying he experiences social isolation and social communication deficits. So it's not just the adequacy, it's that they didn't do it at all. They did no formative evaluation. I think the trial court errs on that. The trial court's under misapprehension that they actually did any formalized testing. In fact, they had assessors going in to observe Matthew announcing in the classroom that they were there to assess him. In all the years as a special education advocate, I've never heard of an assessor announcing to students in the classroom they were there in such an embarrassing and depreciating manner that they were there to assess a particular student. Beyond that, if we're to only have a standard that the performance is academic-based, that it's only based on teacher observation and those measures are how the child performs in the curriculum, then the court would be excluding parents in their entirety because no parent could possibly say, well, you're wrong, he didn't deserve that grade. And that's what the trial court does here. That's the biggest error, this court in Amanda J. Well, but when teachers see kids every day, they don't just see what their grades are, they see how they behave with other students. I mean, teachers see kids almost more than the parents do a lot of times. Well, not in this case. In fact, any progress that Matthew did make was not parsed out by the trial court because it failed to admit critical evidence of the thousands of hours that Matthew was receiving outside of his school day. He was receiving Medicaid-based services and speech-language therapy, social communication, developmental therapy, a number of services. So for the district to say he performed well miraculously after the prior school district acknowledges that his Asperger's is incredibly debilitating, after numerous agencies recognize that his Asperger's is incredibly debilitating, after the parents cry out, his disability is debilitating, he's functioning like a six-year-old, for the trial court to find that the parents had no role in supporting him and propping him up with the thousands of hours that the parents were providing is reversible error. And the court in Amanda J., this court held that parents are in a unique situation because they get to observe, like parents did here as well as all of the experts, they get to observe Matthew in a number of different environments. That's what Amanda J. holds. It finds that parents, the ability of parents to observe their child in a multitude of environments is critical to the determination of whether, what the child needs through the IEP process. So by only, by allowing the court to narrow the Idaho statute when state policy clearly dictates a broader scope interpretation of how a child is eligible, this court would be excluding parents and their experts from the process entirely because the focus would just be grades. And again, the Department of Education has promulgated regulations that specifically state that a child passing from grade to grade does not make them ineligible and that academic factors alone are not a basis for determining ineligibility. But even more concerning was the structural errors, and I heard the court discussing this earlier about did you win below if you didn't win on the issue of eligibility, are you the And that gets to a critical structural error by the trial court, which is reversible. Because what the trial court does is a couple of things. Number one, it doesn't You're talking about the district court? The district court, correct. Not the hearing officer. The hearing officer, and then, okay. So many hearing officers. But the hearing, but the, that, the eligibility that we're talking about for the IDEA services was made by the district court. That's ultimately by the district court, correct. But the district court commits incredibly concerning We're reviewing the district court. That's correct, and that's what I'm talking about. Creates these structural errors that permeate the proceeding. For one, the district court excludes parents' expert testimony. Of most concern is that the district court was uninterested in the testimony of Dr. Webb. At a minimum, that would warrant remand to the trial court to admit all the testimony that was requested over and over by the prior attorney in this case. Dr. Webb conducted the independent educational evaluation. So all the court had was the district's, you know, subjective view of her assessment. I think that is a structural error that warrants reversal, or at a minimum, remand. The trial court also ignores Dr. Beaver. Dr. Beaver is the only neuropsychologist who's recognized as one of the top and critical experts in the field of Asperger's and autism. And he conducted a thorough neuropsychological evaluation. And actually, when you asked earlier, I thought it was interesting. Well, I'm going to have to say that there's a little hyperbole here, because to say when there are irreconcilable reports and a trier of fact listens to them and has to make credibility determinations and decide what the trier of fact thinks, because they don't go your way to say that they ignored it and found one more persuasive, I think that's overstating. Well, actually, that's not what I was stating. How can you even weigh anything if you don't admit it in the first instance? The trial court doesn't even admit the testimony from Dr. Webb or Dr. Beaver at all. So there was nothing to weigh. And I'm concerned when this court says, well, the school district has school psychologists and the school district has educators and they're all in it for the student. And you know what? Hearing Officer Price and the trial court in the 320 decision, both judges had concerns about the position that the district was taking with the student, specifically that they were found that he had not overcome the adverse effects of his disabling condition. But more importantly, we need an objective standard. Just because you're a school psychologist, just because you're an educator, doesn't make you knowledgeable in Asperger's or how that affects you in the classroom. All it does is say, it goes back to the standard of, well, you gave a grade, so you must know what you're doing. And that's not an objective standard. It excludes the parents, and it certainly in this case excluded the firepower that Schaefer v. Wiest, a Supreme Court case, requires hearing officers and district courts to consider when they are admitting critical evidence in a proceeding such as this one. I'm sorry. I didn't mean to talk over you. I apologize. I'm so impressed with your ability to speak for so long. I apologize, Your Honor. I'm almost taking a breath. No, I'm impressed. Here's my question. The second hearing officer refused to consider the testimony that had been given before the first hearing officer of Drs. Webb and Beaver. Do I have that right? Not only that, that's correct. Yes. Yes, correct. Yes, that's correct. Yes. Yes. And the district court said that was okay. Without any analysis or basis, correct. The district court said that was okay. That is correct. Correct. What is the applicable legal standard, either in terms of that the hearing officer had to observe in making that determination, or what's the legal standard that applies to the district court looking at a hearing officer's decision in that regard? Okay. What does the law tell us? This might be more than a yes or no. Okay. This is the one where you can extrapolate. Thank you. So, first of all, I want to be clear, because I think there's so many hearings that what had happened here was that the initial issue of eligibility that the school district brings, the trial court believes is still at play. So to the extent that that issue now makes its way to the trial court, all of that 16 and a half days of testimony was still relevant to the issue of eligibility that was initially raised by the school district. I was looking for your answer to begin with. The legal standard applied to a hearing officer or a district judge, the admission or refusal of evidence is? Non-cumulative, relevant, and otherwise admissible testimony under EM versus Pajaro Valley Unified School District. And the reason why I bring up the issue of what the issue was that was still at play is the court fails to consider or even analyze how, when the issue is still ripe for adjudication, all of the 16 and a half days that had been heard on that issue was no longer relevant, you know, cumulative and otherwise admissible. So I think the trial court was under a misapprehension about the issue that was still right before it, which really is a great basis for remand, to ask the trial court to recognize you still had that issue, articulate a reason why all of that testimony related to that issue before you was not relevant, especially when Dr. Webb conducted the IEE at issue and had no opportunity to testify or provide information to the trial court. But critically, and I wanted to address this issue because I also think there's a misapprehension about the record, I have the first hearing officer's decision in front of me and there were two issues, as the court is aware, that the school district raised in that issue. Because we're in a unique situation where the school district here sues the family. And the two issues were, is respondent entitled to the IEE? But the second issue that hearing officer Price presided over was, does respondent qualify for special education pursuant to the IDA and the special education manual? And on page 8, which is in the SCR 789, the hearing officer Price says, for the reasons stated herein, the hearing officer believes that the answer to these questions is in the affirmative. But the trial court does nothing to consider what that meant within the confines of eligibility. We have a hearing officer saying, the answer to does the respondent qualify is in the affirmative, meaning the school district lost. The student was deemed eligible. I think that's a very narrow rating of that particular, because I read it as that he didn't roll on the second prong. And I understand that, except that when you read the second decision, the second amended decision that the hearing officer decides, the last paragraph adds the language, review the IEE so that you can review the services necessary for the formulation of an IEP. Now you cannot order the formulation of an IEP unless you've decided affirmatively that the student qualifies under special ed. So if we're going to read the first hearing officer's decision at all, we've got a ruling in the affirmative and then an ordering of an IEP to be developed before Matthew is to start the next school year. But the school district refused to recognize that order, and at a minimum, the trial court, by not admitting or discussing or analyzing the order, creates a structural error because there's no discussion for the court. But lastly, I also would like to highlight a case that's on all fours with this case, which is the Mr. I case from the First Circuit. Now the Mr. I case was recognized by the trial court in the prior hearing, in the 320 hearing, as... Just keep in mind, I'm not going to give you additional time, so you're going into a rebuttal. The trial court directly on point. So I'm asking this court to uphold and apply the rationale of the First Circuit, whereas here we had a student with Asperger's, and the state law in Idaho is almost identical to the state law that was at issue in the First Circuit. And the First Circuit declined to narrow the eligibility criteria to how a child performs in school. We're asking this court to adopt the rationale of Mr. I. And I'll reserve the last couple of minutes I have for rebuttal. Thank you. If it pleases the court, I'm Elaine Eberharder Mackey, and I'm representing the Meridian Joint School District in this particular matter. There was a multitude of questions and issues that were brought up by opposing counsel with regard to this matter. But one of the first things I'd like to mention is while opposing counsel discusses the fact that this particular student is receiving Medicaid services, it's important to recognize that's very, I don't believe there's anything in the record with regard to that, but to also indicate that it's a completely different standard to qualify for Medicaid services. And that does come into play in this particular case, because when opposing counsel and in the briefing talk about Matthew as performing at a six-year-old level, that is based upon solely the parent's perspective. It's based upon the SBAR, which is done by the Department of Health and Welfare, for the purposes of qualifying for Medicaid. Now, also I mentioned in the previous case with regard to an excellent roadmap for this court, and that's the written notice that was set forth with regard to denial of eligibility in this particular case. And then the other roadmap that opposing counsel did not include, but is the seminal document in this particular case, and that is the 268-page eligibility report. Now, I just want to point out to the court that the issue of how the school sees the student have always been at polar opposites. The school district does not see the student operating as a six-year-old. And in fact, the school psychologist in his report specifically indicated, and I'm looking at page 17 of the eligibility report, although it is not uncommon to have discrepancies between the parent-slash-caregiver and teacher ratings, it appears highly unlikely that Matthew would be able to manage the daily demands that present themselves in the school setting if the teacher's ratings were not an accurate representation of his adapted functioning in the school setting. Teacher rating scales are consistent with observations that previous teachers and other times in the process of developing appropriate supports for Matthew. And that dealt in part with regard to the significant discrepancies of what the parent is reporting Matthew could do at home versus what teachers and staff are reporting what Matthew could do in the school setting. This court also has the opportunity to actually take a look at Matthew. Again, it's three years ago, but there have been videos submitted to this court that set forth Matthew broadcasting the school news and doing an excellent job. I believe it may also have on there a public service announcement that he did with another student. When there is an argument being made that the school district did only look academic, all you have to do is look at the eligibility report. Is it possible to determine the need for an SES without considering the IEE? Your Honor, the school district is obligated to consider all relevant information that the parent has provided. So the IEE is absolutely relevant information to the determination of SES? To eligibility, yes. And how do you explain the hearing officer in the second case refusing to consider the testimony given in the first hearing officer, Drs. Webb and Beaver? Webb wrote the IEE, didn't he? She did. She did, I'm sorry. She did, and she amended it five times, yes. How do I... The testimony that Dr. Webb and Dr. Beaver provided in the 320 had nothing to do with the new evaluation that was conducted. If we're looking at Dr. Webb, her testimony was as an expert witness on the issue of the appropriateness of the Boise School District evaluation. That is far different than looking at the eligibility determination that is being dealt with in this particular case, in the 426. She was also, as both the hearing officer and the district court identified, there was an affidavit that she was unavailable for one particular week of the due process hearing, but the hearing continued past that time. The hearing officer was more than willing to take her testimony out of order, to take it via telephone conference, yet she did not appear. Well, and it appears the hearing officer would allow witnesses to appear by video or phone, too. Yes, telephonically. So, did the parents seek to have Dr. Webb appear by video? No. No, Your Honor. Dr. Webb did not appear in any fashion, nor were there any other requests for Dr. Webb to appear. So, looking at Dr. Webb, yes, she could have had valid testimony if she had been brought forward by parents' attorneys with regard to the eligibility report that's at issue in this particular case. She didn't appear. Her previous testimony would not have been relevant. So, Matthew also had another jury trial, right, brought under the ADA? That is correct. And he was found not to meet that criteria, right? That is correct. But that really isn't the same as the criteria in this one, so it doesn't have any preclusive effect? No. That was something that the district court asked us to look at, and the court determined that it did not have a preclusive effect. If it did have a preclusive effect, that would be negative for Matthew, right? Correct. Okay. With regard to Dr. Beaver, I guess finishing up on the question presented, Dr. Beaver, and this was an argument we had in the 320 case on the eligibility issue and on the appropriateness of the Boise School District evaluation, and that was, Dr. Beaver was specifically for the criminal case. He never observed Matthew at the juvenile detention center, never observed him at Centennial High School, and the court in the 426 decision made a determination that it was also, there had been a significant time lapse, I think close to three or four years since he had actually evaluated Matthew, and also never saw him in the school setting. It was solely for the criminal proceeding. And there was no affidavit provided by Dr. Beaver on his availability or unavailability. He was never brought forth. What's your client's position on the injunction against graduating? Your Honor, our position on the injunction is that it was in error. This Ninth Circuit has a case, the Gregory K case, that specifically says that the stay educational placement, or in the Gregory K case, what the court called it was the status quo, comes into play when the student is on an IEP. You're looking at the services on the IEP, and that's the placement, the special education the child is receiving, that's the placement. In this particular case, we have a student who met all graduation requirements. He met the academic component. He passed the ISATS with proficient or advanced scores. And he also passed the senior project, which required writing a paper and presenting that paper to a panel of teachers. And he passed all of that, yet the school district was not allowed to give him his diploma. So he is currently in his seventh year of general education high school. His peers who graduated are finishing up their junior year of college. So in answer to that question, Your Honor, the school district believes that it was an erroneous determination. I think you've answered it. I think you've answered it. Did any hearing officer determine that Matthew was eligible for special education services? No, Your Honor. No hearing officer. But what the parents' counsel said, what can you direct me to that says that they didn't? I can direct you to his decision where he says it's premature to make the determination on eligibility. He was surmising that perhaps Matthew would qualify once an IEE was completed. But I would also mention to this Court that under Idaho law, a student cannot be found eligible for special education solely on an independent educational evaluation. So in this particular case, once the independent educational evaluation was concluded, although it did have amendments, the parent then, so it was concluded, if you will, in August, at least the first version of it. The parent then asked for another evaluation in September of 2011. The school district then began the evaluation process, and that's what the 268-page eligibility report consists of. It consists of the eligibility report itself and all the attached documentation, which includes Dr. Webb's reports, all of her amendments to those reports, Chris Curry's observations. It includes all the documentation that was reviewed by the team. And I would like to back up for just a minute. While there was a discussion that the school district only did observations, the process on identifying the various assessments that are going to be done, including formal observations, are done through a team process. And that occurred in this particular case. Input from the parent was received, the parent's attorney, the parent's experts. All of that was received. Now, you also have to realize that this child, Matthew, perhaps was the most evaluated, assessed young man in the entire Treasure Valley. And there's testimony from Dr. Hall with regard to that. He had not dealt with any other student who had as many assessments as this particular student. Dr. Webb also did some additional assessments. So when we look at the necessary assessments, the team made a determination, school personnel made a determination, we don't need to do any more formalized assessments. We need to keep doing observations. And then the school psychologist did do a behavioral rating scale that was provided to parents and was provided to staff. The outcome of that rating scale is exactly as you would suspect. They were at polar opposites. The parent indicated the student could hardly perform at all. School staff was providing, and again, there was variety among the teachers, but providing that he was performing in the average range. So again, I would like to refer this court to the written notice, which sets forth the that occurred with regard to the eligibility process, as well as the eligibility report itself, that sets forth and is very clear that the school district looked at all aspects of this particular child, and I believe both the hearing officer and the court make mention of that. No stone was left unturned with regard to this particular student. Any concern that was brought up at school that the team discussed, and then a determination was made as to, is that a concern that we need to assess more? Is that a concern that we need to observe more? What do we need to do to get through this process to come to the final determination? Is this a child with a disability? And the final determination was no. The determination was, yes, the child has Asperger's, or high-functioning autism. But there was not an adverse effect, and while opposing counsel talks about Idaho's definition, it's broad in scope, there still has to be an adverse effect. And it has to be more than what other students, non-disabled peers have. And in this particular case, when staff would observe Matthew and observe non-disabled peers, there was little if no difference between the students. So again, this goes back to the fact that there is such a difference in perspective of how Matthew would perform. I would also want to mention that Dr. Webb never observed Matthew in the school setting. The parent never observed Matthew in the school setting. Yet we have all these allegations that Matthew was not able to perform. When we have teachers, Jan Hill had him both in the ninth grade, the 11th grade, and the 12th grade, all three years. Her testimony was she had had more than 600 contact hours with him. He would come in and be there during lunch. She would see him interacting with peers. So is Matthew still at the high school? Matthew is still at Rocky Mountain High School as a library aid, one class a day. That's what he's elected to do. And Matthew and his parents have been informed that he is allowed to take any class in any high school within the Meridian School District that he hasn't already taken. And he's chosen to take library aid. So I would be happy to take any other questions that you might have. So is it the same judge that ruled against the parents on the second prong that also ruled against you? Yes, Your Honor, it is. All right. Thank you. What's your position on the graduation injunction? Matthew's about to graduate because he's going to reach the age under the IDA that the state put order will be. I think it's being mooted out. He's 21 now. And he'll have just a few more months left before he's graduated. So I think that issue at this juncture is mooted because the state book can no longer be in effect for a student who reaches the age of majority under the IDEA. I want to clarify Dr. Beaver was on a ship. And that's what she says in her affidavit. And that's in the record. So she could not be videotaped. There's no way to get phone connection to her when she's out on a ship for almost a month. There was a reference to additionally the hearing officer Price's decision about whether he ultimately answered in the affirmative, which I read you the page that he did with respect to eligibility. But more clearly, hearing officer Price heard the same things that you're hearing from opposing counsel now. On page 799, hearing officer Price, the first hearing officer, said that he accepted. Matthew excelled in other classes and even seemed to be making progress in social arenas as displayed by his acceptable performance. However. He ordered an IEE. And you can't make that determination without an appropriate IEE. How could he make that determination under the law? Well, that's where I'm getting to on the next sentence. He says, based on the evidence that he has before him, in spite of the fact that the student seemed to be making progress, it does not appear that he has overcome his disability to the extent that it has no adverse effect on his performance. That was with testimony from teachers saying exactly what you heard opposing counsel today. Then in a class like broadcasting, where students with Asperger's excel because it's scripted. They don't have to talk to people. They're talking to a machine. They write down scripts. They read it to a camera. That's a perfect class for a classroom setting for a student with Asperger's because it doesn't require them to test their social functional communication skills, which is the hallmark of a child with Asperger's. But I need to clarify one important point. This was not just about the parents versus the school. The parents had eight experts who spent hundreds of hours of providing special education services, speech and language, occupational therapy, many of whom observed Matthew in the school. They all told the school district, you are missing clues about this young man. This young man is debilitating. As Asperger's so debilitating, he has no friends. He wears black gloves to school. He is suffering from anxiety in the classroom. So we're asking this court to incentivize school districts that in the face of students like Matthew to provide the special education services that they need, which some of those needs cannot be measured strictly within the confines of the general education curriculum. All right, your time has expired. Thank you both for your argument in this matter. This matter will stand submitted. Court is now on recess until tomorrow at 9 a.m.
judges: Fernandez, Hawkins, Callahan